LONE STAR LODGE, KNIGHTS AND LADIES OF HONOR ET AL. V. MARIE J. COLE ET AL.

Decided October 29, 1910.

1.—Injunction—Dissolution—Practice.

Upon motion to dissolve an injunction on bill and answer, the answer when sworn to is taken as true in so far as it is responsive to the bill; and ordinarily a temporary injunction granted ex parte, upon the coming in of a sworn answer explicitly and unqualifiedly denying all the material allegations of the bill, will be dissolved. But the rule is not absolute, and the court may in the exercise of a sound discretion refuse a dissolution when the peculiar circumstances warrant a departure from the rule.

2.—Fraternal Societies—Judicial Control.

While the courts will not undertake to direct or control fraternal societies in the matter of discipline or internal policy, they will entertain jurisdiction and afford relief when some valuable or property right is involved.

3.—Same—Injunction—Property Rights.

In an injunction suit between members of a fraternal society, the question being whether or not any property rights of the plaintiffs were affected by the suspension of their lodge, and if not, was notice to the lodge or some member thereof prior to the issuance of the order of suspension by the supreme lodge, essential to the validity of said order, pleadings considered and held insufficient to warrant the interposition of the courts.

4.—Same—Possession of Paraphernalia.

The possession of the paraphernalia used in the ritual and secret work of a lodge is not such a property right as will warrant the courts in taking cognizance of a controversy between members of a lodge concerning the same when it appears that the title to the paraphernalia is vested in a supreme lodge and the members of the local lodge have only a right to use the same.

5.—Same—Dissolution—"Improper Conduct."

The constitution and laws of a fraternal society provided that a subordinate lodge might be dissolved by the supreme lodge for improper conduct. The term "improper conduct" was not defined by the laws of the society. Held, there likewise being no definition of said term by the laws of this State, its meaning and scope should be left to the determination of the society itself.

6.—Same—Benefit Certificate—Injunction.

When it appears that the validity of benefit certificates issued by a local lodge of a fraternal society is not necessarily affected by the dissolution of the lodge which issued them, the mere fact that they were outstanding would not be sufficient cause for invoking the equity powers of the courts to prevent the dissolution of the lodge.

7.—Injunction—Trivial Value.

The courts will not interfere by injunction to prevent the loss of a trivial amount—in this case one dollar.

8.—Same—Fraternal Order.

Pleading considered and .held insufficient to show such valuable or property rights in the moral, social or intellectual privileges possessed by mem-

bers of a fraternal order, or in the right to participate in the control and management of the affairs of the order, or in the right to receive such "sick benefits" as the lodge might prescribe, as would justify the courts in taking cognizance of a controversy growing out of a dissolution of the lodge.

### 9.—Same—Property Right—Definition.

The property right in a fraternal order which will justify the courts in taking jurisdiction and granting an injunction, must be some distinct individual right under a contract or other obligation of the order with a member' as such, and not merely a right incidental to membership.

### 10.—Same—Other Remedy.

If the courts will ever entertain jurisdiction of a controversy in a voluntary society where no property rights are involved, they will not do so until all the remedies within the society have been exhausted.

Appeal from the Forty-fourth Judicial District, Dallas County. Tried below before J. C. Roberts.

*A. E. Firmin, W. P. Linthicum* and *L. C. McBride,* for appellants.— Courts, while indisposed to interfere with the internal management of fraternal benefit associations, will do so to protect property rights or valuable privileges, and the association must confine itself to the powers vested in it and act in good faith under by-laws which do not violate the laws of the land, or any inalienable right of the member. Cotton Jammers, etc., v. Taylor, 56 S. W., 553; Thompson v. Grand Int., etc., 91 S. W., 834; Lysaght v. St. L. Stonemasons, etc., 55 Mo. App., 538; 29 Cyc., 200; Natl. Council v. State Council (Va.), 51 S. E., 167.

Fraternal benefit associations are not vested with the right of expulsion or suspension of either its members or subordinate lodges by the general law of the land, but such power and right of expulsion rests alone in special agreement as usually evidenced by its charter, constitution and by-laws. Grand Grove, etc., v. Garibaldi (Calif.), 62 Pac., 486; 29 Cyc., 46.

The member or local lodge accused must have due notice of the charge upon which suspension or expulsion is predicated, and be given an opportunity to be heard in defense, and if no other method of notice is prescribed, it must be personal; and a by-law attempting to authorize expulsion or suspension without notice is in all jurisdictions held to be unreasonable, null and void, at least in all instances where a property right or valuable privilege is involved. Grand Grove, etc., v. Garibaldi (Calif.), 62 Pac., 486; 38 Pac., 947; Cotton Jammers, etc., v. Taylor, 56 S. W., 554; Manning v. San Antonio Club, 63 Texas, 166; Swaine v. Miller, 72 Mo. App., 446; Fed. Life Ins. Co. v. Risinger (Ind.), 91 N. E., 533.

No appeal within the Order from an attempt at suspension of a local lodge thereof is necessary or required where such attempted expulsion was void for lack of notice or authority, or otherwise. Sup. Lodge v. Eskholme (N. J.), 35 Atl., 1055; Hall v. Sup. Lodge, 24 Fed., 450.

Where a member would be required to wait a whole year and be compelled to appear before the appellate body thousands of miles distant, in

order to prosecute an appeal from the suspension of his lodge, an application to the State court will lie to enforce the rights of the members to re-instatement. Brown v. Sup. Lodge, etc., 72 N. Y. Supp., 806, affirming 70 N. Y. Supp., 397. (3 Cooley, 2390.)

Dissolution of injunction does not follow necessarily upon coming in of answer denying the allegations of the bill. Friedlander v. Ehrenworth, 58 Texas, 354.

*Curtis Hancock* and *Locke & Locke,* for appellees.—Upon the coming in of a sworn answer denying all of the material allegations of the bill, a temporary injunction previously issued should be dissolved, except in extraordinary circumstances. Daniels v. Daniels, 127 S. W., 569; Dawson v. Baldridge, 118 S. W., 593; Frazier v. Coleman, 111 S. W., 662.

On motion to dissolve an injunction on bill and answer, the answer, when sworn to, in so far as it is responsive to the bill, is taken as true. Dawson v. Baldridge, 118 S. W., 593.

The order of suspension was valid and proper. Manning v. San Antonio Club, 63 Texas, 166; McGuiness v. Court Elm City No. 1 F. of A., Conn., 60 Atl., 1023.

No property right of any plaintiff is affected by any act complained of. Bragaw v. Supreme Lodge K. & L. of H., 38 S. E., 905; United Brothers of Friendship v. Haymon, 55 S. W., 948.

The plaintiffs' pretended right of control of the affairs of the incorporated Supreme Lodge, Knights and Ladies of Honor, is not such a property right as will justify the courts in taking jurisdiction and issuing the writ of injunction. Clark v. Wallace, 45 S. W., 504; Wellenvoss v. Grand Lodge, K. of P. of Ky., 45 S. W., 360.

The right, if any, of the plaintiffs to the paraphernalia, is not such a property right as justifies the court in taking jurisdiction and issuing a writ of injunction. People v. Grand Lodge Grand Jurisdiction Ill. K. of P., 46 N. E., 768; Lawson v. Hewel, 50 Pac., 763; Manning v. San Antonio Club, 63 Texas, 166.

The right of membership in the suspended lodge is not such a property right as will justify the courts in taking jurisdiction and issuing the writ of injunction. O'Brien v. Musical Mutual Protective & Benevolent Union, 54 Atl., 150; Lawson v. Hewel, 50 Pac., 763; People v. Grand Lodge Jurisdiction Ill. K. of P., 46 N. E., 768; Wellenvoss v. Grand Lodge K. of P. of Ky., 45 S. W., 360; Manning v. San Antonio Club, 63 Texas, 166; Screwmen's Benevolent Association v. Benson, 76 Texas, 552; Gipson v. Morris, 83 S. W., 226.

If the courts will ever entertain jurisdiction of a controversy in a voluntary society where no property rights are involved, it will not do so until all remedies within the society have been exhausted. Screwmen's Benev. Assn. v. Benson, 76 Texas, 552; Benson v. Screwmen's Benev. Assn., 21 S. W., 562; Supreme Council, Catholic Knights of America v. Gambati, 69 S. W., 114; Oliver v. Hopkins, 10 N. E., 776; Gipson v. Morris, 83 S. W., 226 (229); Meade v. Stirling, 27 Atl., 591;

People v. Women's Catholic Order of Foresters, 44 N. E., 401; Niblack on Benefit Societies, sec. 111.

TALBOT, ASSOCIATE JUSTICE.—This is an appeal from a judgment dissolving a temporary prohibitive injunction and refusing a mandatory injunction prayed for by the plaintiffs. The action was originally brought by twenty-nine persons, members of the Lone Star Lodge, Knights and Ladies of Honor, against William Repp, Protector of said Lodge, Marie J. Cole, Grand Protector of the Order within the State of Texas, and George D. Tait, Supreme Protector of the Order, to restrain them from interfering with the affairs of said Lodge. A temporary injunction was issued as prayed for, and the defendants were notified to appear on September 16, 1910, to show cause why said injunction should not be made permanent. On September 16, 1910, they appeared and filed an answer to the rule to show cause and filed also an answer to the petition. The plaintiffs thereupon filed an amended petition making two other members of said Lodge No. 1935, parties plaintiff and, in addition to the persons named, made the Supreme Lodge Knights and Ladies of Honor, Grand Lodge Knights and Ladies of Honor, of the State of Texas, W. J. Condon and Robert Hunerberg, two of the trustees of said Lone Star Lodge, and J. M. Cole, husband of the defendant, Marie J. Cole, parties defendant. In said amended petition plaintiffs prayed for another temporary prohibitive writ of injunction and also for a mandatory injunction. The prohibitive writ was granted and the defendants notified to appear September 23, 1910, to show cause why the mandatory writ of injunction should not also be granted. On September 23, 1910, the defendants appeared and filed a first amended original answer and also an answer to the rule to show cause. In said answer they asked that the temporary injunction theretofore granted be dissolved and that said mandatory injunction be refused. On said date the hearing was postponed until the next day and in the meantime Hon. E. B. Muse, Judge of the Forty-fourth Judicial District, and Hon. J. C. Roberts, Judge of the Sixty-eighth Judicial District, exchanged districts. On September 24, 1910, the plaintiffs filed a response to the defendants' answer to the rule to show cause, and consented that the motion to dissolve the previous injunctions be heard immediately. Thereupon the hearing before Judge Roberts proceeded; but not being concluded on that day it was postponed to and continued on September 28, 1910. The hearing was on the sworn pleadings alone, no evidence being introduced. At the conclusion of the hearing, the court dissolved the temporary injunctions theretofore issued, and refused the mandatory injunction.

The plaintiffs complain of an order of suspension of said Lone Star Lodge No. 1935, issued by the said Supreme Protector of the Order, George D. Tait, on September 3, 1910, the delivery of certain paraphernalia by the trustees of said lodge to the defendant, Marie J. Cole, as deputy supreme protector in pursuance of said order of suspension, and

of the denial of the authority of the plaintiff, R. Roth, as financial secretary of said lodge, to collect dues and assessments from the members thereof since said order of suspension. The prayer of the petition is that the judge of the court issue a mandatory writ of injunction, or such other writ as may be proper, to effect the immediate return and restoration unto said local lodge and the plaintiff members thereof of its property set forth in the above petition as having been wrested from it; that the defendants, and each of them, be enjoined from in any manner interfering with the custody and use of said property so long as same may be used by plaintiffs for the benefit of said local lodge; that the defendants, and each of them, be restrained and enjoined from in any manner interfering with the deliberations, meetings or workings of said local lodge; that they, and each of them, be enjoined from in any manner contending, or claiming that said local lodge is dissolved or suspended, and be enjoined from in any manner enforcing or attempting to enforce such contention or claim; that the defendants, and each of them, be restrained from in any manner questioning the legality of payments in the form of assessments, dues or otherwise heretofore made or hereafter to be made by plaintiffs and other members of said local lodge unto plaintiff R. Roth as the duly elected and qualified agent and officer authorized to accept and receipt for said payments; that defendants, and each of them, be restrained and enjoined from in any manner asserting, contending or claiming that the rights of plaintiffs, and those for whom they sue, as insured members of the order, have become or are impaired or are not in full force and effect.

The grounds alleged upon which plaintiffs seek the foregoing relief are, in substance, that they are members of said suspended lodge; that said order of suspension was unauthorized and invalid; that the chief purpose of the order is to furnish insurance on the lives of its members out of a relief fund created by dues and assessments paid into the treasury of the local lodge, and by the proper officer of such lodge transmitted to the supreme treasurer of the order, but that one of the privileges among others of said order is that of giving moral and material aid to its members by holding moral and instructive lectures, and by encouraging each other to obtain employment etc.; that through the medium of said lodge they are entitled to participate in the control and management of the order and in the disposition of the relief fund thereof, amounting to about $300,000; that they are holders of benefit certificates, or contracts of insurance, issued by the order, and make payment of the dues or assessments accruing on account thereof to the order through the agency of said lodge and its officers; that the order of suspension affects their benefit certificates in the order; that it undertakes to impose certain onerous conditions on their rights to maintain the same in force, in that, the effect of the suspension is to compel the members of the suspended lodge to obtain from the supreme secretary of the order a certificate of good standing, and to deposit it in sixty days with such other lodge of the order as the members may desire to join, and to pay there-

for, in addition to accrued assessments and pending assessments, the sum of one dollar; that such member must also show that since the suspension of the lodge he has not been sick, or undergone any surgical operation, nor has he received any serious injury; that if he has, he must be re-examined before admission.

Plaintiffs further allege that the suspension order made by the supreme protector and the wresting of the lodge property, consisting of its charter, emblems, badges, books, etc., used in holding the secret meetings of the lodge in accordance with the ritual and secret work of the order, of the estimated value of $750, is void and of no force or effect because such action was taken ex parte and without notice to the suspended lodge or to any member thereof. They aver that the defendants, Condon and Hunerberg, two of the trustees of said lodge No. 1935, are in sympathy with their co-defendants and have conspired with them to attempt the destruction of said lodge and to wrest its property from it, and that by reason of these facts said trustees are unfit persons to be entrusted longer with the supervision and custody of said property; that the plaintiff, R. Roth, is the financial secretary of said Lone Star Lodge and authorized to collect dues and assessments from the members of said lodge, but that the defendants, since the issuance of said order of suspension, are disputing his authority to do so.

The defendants answered under oath denying specifically the material allegations of plaintiffs' petition upon which they base their right to the injunctions asked. They admit the order of suspension but aver the validity and regularity thereof, setting forth the provisions of the constitution and laws of the order under which it was issued, and the existence of conditions which they claim authorized and required its issuance; that the defendant, Marie J. Cole, holds the property of the lodge, charged to have been wrongfully wrested from the plaintiffs, in trust, setting forth the provisions of the constitution and laws of the order and the existence of facts which it is claimed authorized and required its delivery to her. The answer denies the conditions alleged to be imposed upon the maintenance of the benefit certificates of the plaintiffs and other members of said lodge; avers that said benefit certificates are contracts exclusively between the incorporated Supreme Lodge Knights and Ladies of Honor and the plaintiffs, and are unaffected by said order of suspension; avers that the rights of the plaintiffs as members of the order are not affected by said order of suspension; that the plaintiffs and the members of said lodge may maintain their certificates in force by simply remitting their dues and assessments to the supreme treasurer, or that they may deposit their certificates of good standing in any other lodge of the order to which they are acceptable, and remit their dues and assessments through such lodge; that there are four other lodges in Dallas and immediate vicinity; and that the moral, social and intellectual privileges extended by the order are granted alike through all of such lodges; that the fund of $300,000 referred to by the plaintiffs, is a mere temporary fund, received from assessments and to be im-

mediately paid out in discharge of matured benefit certificates and not lawfully to be expended for any other purpose; sets forth the extent of the plaintiffs' alleged right to participate in the control and working of the order; avers that it is infinitesimal and merely incidental to membership; avers that the order is not engaged in business for profit and does not accumulate funds beyond an amount immediately necessary to discharge its benefit certificates and that the plaintiffs' only rights are to have their beneficiaries receive payment of such certificates when they mature. It is further averred that no property right of the plaintiffs is affected by said order of suspension; and that the laws of the order provide that any member may appeal to the supreme lodge from the action of the supreme protector, if he feels aggrieved thereat; and that none of the plaintiffs, and none of the other members of the lodge, has taken any such appeal; and that in fact, while there were more than three hundred members of said lodge at the time of suspension, only the plaintiffs, comprising the Waldstein faction of said lodge, numbering only about one-tenth of the membership, are complaining at such suspension.

*Opinion.*—As has been seen, the hearing to determine whether or not the temporary injunctions which had been issued should be dissolved and the mandatory injunction prayed for granted, was on sworn pleadings alone, no evidence by either party being introduced, and the question arises, did the court commit reversible error in dissolving the one and refusing the other. Upon motion to dissolve an injunction on bill and answer, the answer, when sworn to, in so far as it is responsive to the bill, is taken as true (Dawson v. Baldridge, 55 Texas Civ. App., 124 (118 S. W., 593), and it is also well settled that ordinarily a temporary injunction granted ex parte, upon the coming in of the sworn answer of the defendant explicitly and unqualifiedly denying all the allegations of the bill material to the granting of the injunction, will be dissolved at the instance of the defendant. Hansborough v. Towns, 1 Texas, 58; Fulgham v. Chevallier, 10 Texas, 519; Blum v. Loggins, 53 Texas, 138; Dawson v. Baldridge, *supra;* Daniels v. Daniels, 127 S. W., 569; New York Chemical Co. v. Spell Bros., 56 Texas Civ. App., 315 (120 S. W., 579). The general rule, however, that in cases where the allegations of the sworn answer of the defendant meet and deny all the equities of the bill the preliminary injunction theretofore issued will be dissolved, is not absolute. If it is apparent that irreparable injury may result from the dissolution, or there may exist some peculiar circumstances warranting a departure from the rule, the court may in the exercise of sound discretion refuse a dissolution. Dawson v. Baldridge, *supra;* High on Injunctions, secs. 1505-1508; 22 Cyc., p. 989. It would seem to follow from the authorities cited, and others illustrative of the rule, that the dissolution, like the granting, of a temporary restraining order or injunction is a matter resting largely in the sound discretion of the court, and in either case will not be disturbed on appeal unless it clearly appears such discretion has been abused.

Looking to the pleadings in the present case we think it apparent that

the defendants' answer is a full and unequivocal denial of all the material allegations relied on by the plaintiffs for the temporary injunction issued and for the mandatory injunction sought, and that no abuse of the judicial discretion, vested in the court in determining whether the one should be dissolved and the other denied, is manifest.

This conclusion might serve to effectually dispose of the appeal, but we are not content to rest the case here, and shall proceed to consider and determine the question presented and discussed by learned counsel for the respective parties, namely: Was the suspension of Lone Star Lodge No. 1935 by the order of George D. Tait, supreme protector, valid and proper? The provisions of the constitution and laws of the order touching the suspension or dissolution of a subordinate lodge, are, so far as applicable to the facts of this case, as follows:

"Sec. 13. Any grand or subordinate lodge may be suspended or dissolved and its charter forfeited to the Supreme Lodge for the following causes and upon proper proof thereof: (1) for improper conduct. . . ."

"Sec. 14. The Supreme Protector shall have authority to suspend any subordinate lodge for any violation of law when in his judgment the interest of the order requires it, which action shall be reported to the next session of the Supreme Lodge."

There seems to be no provision requiring notice to the lodge, or to any member thereof, and a formal hearing prior to the exercise of the power of suspension conferred by the sections quoted, and appellants contend, in effect, that without such provision and notice the suspension of a local lodge is null and void. That the courts have no authority to interfere with fraternal benefit associations by directing or controlling them as to questions of internal policy, nor to decide questions relating to the discipline of their members, but leave such associations free to carry out any lawful purpose in accordance with their rules and regulations, is well established, and the rule applies whether the association is incorporated or unincorporated. But while the courts will not undertake to direct or control such associations in the matter of discipline or internal policy, they will not hesitate when some valuable or property right is involved to entertain jurisdiction and afford relief. 29 Cyc., 199-200; Thompson v. Grand International Brotherhood of L. E., 41 Texas Civ. App., 176 (91 S. W., 834); Gaines v. Farmer, 55 Texas Civ. App., 601 (119 S. W., 874); Clark v. Wallace (Ky.), 45 S. W., 504; and Wellenvoss v. Grand Lodge K. of P., of Ky., 45 S. W., 360.

The question then arises: Were any property rights of the plaintiffs affected by the suspension of the local lodge of which they were members, and if not, was notice to the lodge or some member thereof prior to the issuance of the order of suspension, essential to the validity of said order? We think this question should be answered in the negative. The paraphernalia used in the secret meetings of the lodge in accordance with the ritual and secret work of the order and charged to have been taken and placed in the possession of the defendant, Marie J. Cole,

is, it seems, of little or no value for any other purpose. The plaintiffs do not allege any individual right of ownership in it and so far as the contrary appears, have none. The constitution and laws of the order were part of the contract entered into by each and every member of the order when they became such member, and every article of property owned by the lodge was subject to the provisions of said constitution and laws. The right of the plaintiffs, if any, was merely to use it during the meetings of the lodge. Their right in it is simply an incident to their membership. The constitution and laws of the order provide that the supreme protector may appoint deputy supreme protectors whenever and wherever in his judgment the good of the order requires such an appointment; that when a subordinate lodge is suspended or dissolved it shall be the duty of its last protector, or, if there is none, of its senior officer, to deliver up for dispensation the charter, books, funds, emblems, badges or other property and effects, to the supreme protector or deputy authorized by the supreme protector to receive the same; and any officer or member, having the custody of any part of the property or effects, refusing to surrender the same shall be forever excluded from membership from the order if the lodge is re-instated. The defendant, Marie J. Cole, was appointed deputy supreme protector by the order of suspension complained of by plaintiffs, and the last protector of Lone Star Lodge No. 1935, and the other officers and members thereof, directed to deliver to her the charter, books, funds, etc. In pursuance of this order and of the provisions of the constitution and laws quoted, the defendants Condon and Hunerberg, two of the trustees of the lodge and charged with the supervision and custody of said property, delivered the same to Mrs. Cole and she holds the same in trust to be restored to the lodge whenever it is re-instated. The laws of the order contain a provision to the effect that "All funds and effects received by the Supreme or Grand Lodge shall be restored in the event of its being re-instated."

That the defendants' sworn answer alleged a condition of affairs which authorized the suspension of the lodge in question and showed Mrs. Cole to be the lawful possessor of the lodge property held by her, admits of no doubt. It is alleged in said answer, among other things, that on September 3, 1910, and for many weeks prior thereto, the membership of the lodge was divided into factions which were very bitter towards each other and which were impossible to be reconciled; that the difference between these factions had been largely accentuated by an attempted audit of the books and accounts of the lodge and of the previous officers thereof for a period of several years; that said previous officers, whose accounts were sought to be audited, are among the plaintiffs in this suit; that the meetings of the lodge developed into a series of contests between said factions and were attended with loud and boisterous manifestations of feeling and temper; that on August 29, 1910, at a meeting of said lodge, the feeling between the factions became so violent that a personal collision and display of force occurred; that the pedestal where the defendant, William Repp, who was then and there the protector of said

lodge, presided, was forcibly removed from its proper place to a different part of the hall and in the struggle the said Repp was severely injured on the head, the blood flowing profusely from several wounds; that the defendant, Marie J. Cole, was summoned on said occasion and found the lodge room in a state of riotous tumult, disorder and confusion; that by reason of said condition of affairs it was impossible for the members of the lodge to affiliate together fraternally or to help one another as contemplated by the charter of the order, and the lodge could not carry out the objects and purposes for which it was organized; that members of the lodge had employed attorneys and were threatening to carry the lodge controversy into the civil courts without endeavoring to secure relief for any supposed wrong in the manner provided by the constitution and laws of the order.

The plaintiffs nowhere in their pleadings denied the existence of the dissension referred to or its extent and character as set forth by the defendants' answer. They only denied that they were responsible for the injury inflicted upon the defendant Repp and alleged that such injury was caused by the said Repp's own conduct and by pulling down a chair on his own head. That the lodge could not fulfill the purposes of its organization so long as the conditions mentioned existed, is manifest, and the suspension under the circumstances appears to be not only proper, but probably necessary to prevent the ruin of the lodge.

The contention that the improper or wrongful conduct justifying the suspension of a lodge must be the conduct of the lodge as an entity, and that in any event the conditions alleged in defendants' answer did not constitute wrongful conduct, is, we think, without merit. As said by counsel for appellees, the actions set up in the answer occurred at stated meetings of the lodge and were participated in by all those present and the lodge could act in no other way. As to the claim that the conditions recited in the answer did not constitute improper conduct within the contemplation of the provisions of the law of the order authorizing the suspension of a lodge, it may be said the term, "improper conduct," is not defined either by the statutes of this State or by the constitution and laws of the order, and "the determination of its meaning and scope should be left to the order itself." Josich v. Austrian Ben. Soc., 51 Pac., 18.

We are also of the opinion that there is no property right of the plaintiffs involved by reason of the benefit certificates, or contracts of insurance, issued to and held by them. These certificates being contracts exclusively between the Supreme Lodge, Knights and Ladies of Honor, which is incorporated, and the individual members of the order, are not, it seems, affected by the order of suspension of Lone Star Lodge No. 1935. To maintain their respective certificates in good standing, specific sums, called dues or assessments, are paid by the members each month. The assessments go into the relief fund from which the benefit certificates are paid as they mature. Neither the grand lodge nor the subordinate lodge is a party to the contract. The subordinate lodge serves

merely as an agency through which a member is accepted into the order and is enabled to obtain such a certificate, and through which, ordinarily, he remits his assessments on account of his certificate, to the supreme lodge. It appears that upon the suspension of a lodge any member thereof, if he wishes, may join another lodge by presenting his application accompanied by a certificate of good standing and the sum of one dollar, or if he does not wish to join another subordinate lodge he may remit his assessments directly to the supreme treasurer of the order and thereby maintain his certificate in full force. The additional cost of remitting the assessments directly to the treasurer of the supreme lodge or of securing admission into another lodge is so small that it can not reasonably be said that because thereof the deprivation of the privileges enjoyed as a member of the suspended lodge prior to its suspension, involved such a valuable or property right as will justify the courts in taking jurisdiction and issuing the writs of injunction prayed for in this case. United Brother of Friendship v. Haymon (Ark.), 55 S. W., 948; Bragaw v. Supreme Lodge Knights & Ladies of Honor, 38 S. E., 905.

Nor do we regard the moral, social and intellectual privileges that plaintiffs may possess as members of the lodge, the alleged right to participate in the control and management of the affairs of the incorporated Supreme Lodge, Knights and Ladies of Honor, or the right to receive such sick benefits as the lodge may prescribe, such a valuable or property right as justifies the court in taking jurisdiction and issuing such writs. Gaines v. Farmer, 55 Texas Civ. App., 601 (119 S. W., 874); Wellenvoss v. Grand Lodge K. of P., 45 S. W. (Ky.), 360; Clark v. Wallace, 45 S. W., 504.

It is alleged that the order is not engaged in business for profit, has no capital stock and does not accumulate any funds beyond an amount immediately necessary or required to discharge the benefits promised in its certificates, and that the plaintiffs have no right to the relief fund except the right conferred by their several benefit certificates, which is the right to have their beneficiaries receive payment of such certificates when they mature. The relief fund of $300,000, which plaintiffs allege was on hand at the date of the suspension of Lone Star Lodge, was received from assessments and is especially charged with the payment of the benefit certificates held by the members of the order and can not be used for any other purpose, and there is no allegation that this fund is being diverted, misapplied or in any manner improperly disbursed. The right to receive sick benefits is contingent upon provision being made therefor by the subordinate lodge under such restrictions as it may impose in its by-laws, and there is no allegation that such a provision had been made by the Lone Star Lodge, and hence it does not appear that plaintiffs have or will sustain any loss in this respect. Besides, such right is merely an incident to membership and constitutes no such property right as would authorize the courts to interfere and direct or control the

action of the defendants as representatives of the order with respect to the matters of which complaint is made.

It may also be said that the moral, intellectual and social privileges of which it is alleged (though indirectly and vaguely), that plaintiffs have been deprived by reason of the suspension of Lone Star Lodge, are mere incidents to membership in said lodge, and constitutes no such property right as would warrant the courts in assuming jurisdiction and issuing either the prohibitive or mandatory writ of injunction sought by plaintiffs in this action. Besides, plaintiffs do not allege that these privileges were peculiar to the suspended lodge, while the answer of the defendants show that such moral, social and intellectual privileges as were extended to the members of the suspended lodge, are extended alike by and through all of the order's subordinate lodges.

We conclude that the alleged rights and privileges of the appellants as members of Lone Star Lodge No. 1935, were not such as fall within the meaning of that section of the Bill of Rights which declares that "no citizen of this State shall be deprived of life, liberty, property, privileges or immunities or in any manner disfranchised, except by due course of the law of the land," and therefore appellants were not entitled to notice and a formal hearing before the action suspending said lodge was taken.

In the case of Manning v. The San Antonio Club, 63 Texas, 166, the appellee was an incorporated society organized for literary purposes, to promote social intercourse among its members, and to provide them the conveniences of a club house. The club had no capital stock and no property except such furniture and paraphernalia as were needed and customary, none of which was kept or used for pecuniary profit or gain. A member of the club was expelled under a by-law, reading, "Any member shall forfeit his membership to the club whose conduct shall be pronounced by a vote of the majority of the board of directors present at a meeting, to have endangered the welfare, interest or character of the club," and it was held that the rights of the member so expelled did not come within the meaning of the section of the Bill of Rights above quoted, and that, in the absence of a by-law requiring the member to be notified of the fact that he was to be tried, the action of the directors, though without notice, would not be revised. This decision, as we understand it, in effect, announces the doctrine that the property right which will justify the courts to take jurisdiction and grant an injunction, must be some "distinct, individual property right under a contract or other obligation of the association" with its member as such, and that if the right is only incidental to membership it is not such a distinct and individual right as will authorize the assumption of jurisdiction on the part of the courts and the granting of such relief. This principle is also announced in the case of Supreme Council Catholic Knights of America v. Gambati, 29 Texas Civ. App., 80 (69 S. W., 114).

The case at bar is distinguishable from the case of Cotton Jammers & Longshoremen's Assn. v. Taylor, 23 Texas Civ. App., 367 (56 S. W.,

553), and other Texas cases cited by appellant, in that in those cases it clearly appeared, and was so held by the court, that property rights of the aggrieved party were involved.

But again, we are of the opinion that the decisions of this State, and perhaps the weight of authority upon the subject, are to the effect that if the courts will ever entertain jurisdiction of a controversy in a voluntary society where no property rights are involved, they will not do so until all the remedies within the society have been exhausted. The constitution and laws of the Knights and Ladies of Honor by which Lone Star Lodge No. 1935 is governed, provide that any member of the order considering that the decision or act of any officer is unjust or not in accordance with the constitution and laws, shall have the right of appeal. From the decision or act of the Supreme Protector an appeal may be taken to the Supreme Lodge within thirty days. Neither of the plaintiffs, nor any other member of Lone Star Lodge, appealed from the action of the Supreme Protector Tait in issuing the order suspending said lodge. In Screwmen's Ben. Assn. v. Benson, 76 Texas, 552, it is said: "By uniting with the society the member assents to and accepts the constitution and impliedly binds himself to abide by the decision of such boards as that instrument may provide for the determination of disputes arising within the association; . . . that having voluntarily constituted tribunals to adjust their differences, should not be permitted to resort to the courts of justice to set aside the illegal awards of such tribunals as long as there is another body which has power to reverse the sentence and which has not been appealed to." Benson v. Screwmen's Ben. Assn. of Galveston, 2 Texas Civ. App., 66 (21 S. W., 562); Supreme Council, Catholic Knights of America v. Gambati, *supra;* Gipson v. Morris, 36 Texas Civ. App., 593 (83 S. W., 226); Oliver v. Hopkins (Mass.), 10 N. E., 776; Meade v. Stirling, 27 Atl., 591.

There is no error in the judgment of the lower court, and it is affirmed.

*Affirmed.*

Writ of error refused.