### KELSAY v. LONE STAR GAS CO.
### (No. 9860.)

Court of Civil Appeals of Texas. Dallas. Jan. 1, 1927.

On Motion for Rehearing. March 19, 1927.

Further Rehearing Denied April 16, 1927.

**1. Easements** ⊂=61(8)—**Sustaining objection to answer alleging easement owner's agreement to permit construction of building not interfering with pipe line on land held error.**

In suit to enjoin owners of servient estate from erecting a building which would interfere with right of ingress and egress of pipe line owners to the servient estate, servient estate owners properly alleged in answer that they were without notice of location of pipe line when contract for the construction of the building was let, and that, after notice thereof, plaintiff's agent agreed to construction of a building which would not interfere with plaintiff's pipe line, and sustaining plaintiff's exception thereto was error.

**2. Easements** ⊂=57—**Easement owner held not estopped to question right of fee owner to construct building because prior erected building extended over pipe line.**

In suit to enjoin owner of servient estate from continuing construction of a building over a pipe line operated on a right of way over servient estate, easement owners *held* under facts not estopped from questioning right of fee owner to construct building because building was erected on the land three years prior, and thereafter

a greenhouse was erected which extended some distance over the pipe line without objection thereto by plaintiff.

**3. Easements** ⊂=57—**Easement owners could not confiscate rights reserved to servient owner by showing latter's use of estate made more burdensome easement right therein.**

Where right of way for pipe line was granted over land, owner of easement could not confiscate property rights of owner of servient estate by showing use of property by servient estate owner in construction of a building interfering with the pipe line in such manner as would make more burdensome the right of use secured to it.

### On Motion for Rehearing.

**4. Easements** ⊂=48(6)—**Owner of fee may require owner of easement for pipe line to change construction of line to render possible full enjoyment of property rights of both parties.**

Where plan of construction and material used in original installation of pipe line was not part of right of way granted, owner of easement may be required to change line as originally constructed to enable full enjoyment of property rights of both himself and owner of fee.

**5. Injunction** ⊂=163(1)—**Refusal to dissolve temporary injunction pending litigation over improvements affecting pipe line held proper.**

Where dissolving temporary injunction against improvements affecting pipe line would give owner of fee opportunity to destroy subject-matter of litigation by constructing improvements sought to be prohibited, refusal to dissolve was proper.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Suit by the Lone Star Gas Company against A. M. Kelsay. From a judgment refusing to dissolve a temporary injunction, defendant appeals. Affirmed on rehearing.

H. P. Kucera and E. F. Kucera, both of Dallas, for appellant.

Karl F. Griffith and R. C. Coffee, both of Dallas, for appellee.

VAUGHAN, J. This is an appeal from a judgment rendered by the trial court on the 17th day of May, 1926, refusing to dissolve and continuing in force pending this appeal a temporary injunction issued in favor of appellee, Lone Star Gas Company, against appellant, A. M. Kelsay, on the 30th day of April, 1926, restraining appellant, his agents, servants, and employees, from continuing the construction of a certain building on lot 11, block 1, Bond's Annex to Arcadia Park, over the pipe line operated on a right of way duly acquired by appellee over said lot for the transportation of natural gas from the gas fields, where it is produced, to the western corporate limits of the city of Dallas, where it is received for distribution and sale to the

---

⊂=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

public. As grounds for the writ, appellee alleged that it was the grantee of an easement from one L. W. Bond et ux., Katie Bond, predecessors in title of appellant; that the construction of the building in course of erection by appellant would hinder, interfere with, and deprive appellee of its right of ingress, egress in and to said pipe line, and make the maintenance of said line impossible.

The Kelsay Lumber Company and one W. H. Roegner were made parties defendant. Said defendants filed a disclaimer, and the suit was dismissed as to them with the recovery of their costs.

Appellant filed a general demurrer and many special exceptions to appellee's petition, which were overruled, and by way of sworn averments specifically and positively denied all of the material allegations of said petition upon which appellee based its right for the equitable relief sought. Of the material averments so denied, it is only necessary to make mention of the following:

That appellee did not have an easement in lot 11, as claimed by it; that the construction of the building did not and would not in any way interfere with the ability of appellee to make delivery of gas; that it did not and would not interfere with the maintenance and inspection of said pipe line; that appellant had not obstructed or interfered with appellee's right of ingress and egress in and to the easement claimed; that on the contrary appellant averred that he had in no way encroached upon any right of appellee secured to it by the easement in fact granted to it by Bond and wife; that he was the successor in title of L. W. Bond and wife to all of lot 11 mentioned in appellee's petition, and as such had the right to use same as the owner of the fee.

Special exceptions urged by appellee to the following allegations of appellant's answer were sustained; said allegations in effect being that, at the time appellant let the contract to construct the building in question, he had no notice of the location of the pipe line with reference to said building; that there was nothing apparent on the ground to put him on notice of the location of said pipe line on said lot; that the construction of the building was well under way before he was informed of the location of the pipe line, and that he immediately upon receiving such information directed that proper precaution be taken in the premises and that suitable provision be made in order to enable appellee to maintain and inspect its pipe line; that he and an authorized agent of appellee met on the premises in question and said representative of appellee did then and there state what use appellant could make of the ground in question and outlined by certain drawn specifications how to proceed with the building, and that said representative then and there

stated and represented that, if a certain concrete tunnel be constructed, according to the specifications outlined by him, the building would not interfere with the uses and purposes of the appellee and would enable it to properly inspect, maintain, and repair the pipe line, and would serve for all intents and purposes, and be satisfactory to appellee— all of which appellant agreed to do and perform, under the supervision of appellee. Appellant further answered by tendering to perform the agreement entered into by him with the authorized representative of appellee, and alleged that an injunction as prayed for by appellee would amount to virtual confiscation of the fee of appellant, in that it would deprive him of the use thereof without just compensation.

[1] Appellee's special exceptions Nos. 2, 3, 3, 4, 5, 9, and 10, sustained to the above allegations, contained in the main substantially, as the grounds thereof, that said allegations were immaterial, constituted no defense, did not bear upon any issue in said cause, were vague and indefinite, and contained the conclusions of the pleader, unsupported by sufficient facts to justify same. Said exceptions pointed out the specific allegations to which they were addressed. Under the view we take of this phase of the case, we do not deem it necessary to separately discuss said exceptions, in order to show that the court was in error in sustaining same; it being in our judgment sufficient to say that, under the issues presented by the pleadings of the parties in reference to their respective rights in said lot 11, viz. on the part of the appellee under the right of way or easement granted to it by Bond and wife, and by appellant as the owner of said lot, through a general warranty deed, authorized the defense presented by said allegations to be made. This view will be made more apparent in the further discussion of the case.

[2] We do not think the court was in error in sustaining the other special exceptions as the right of the appellant to use and enjoy said lot No. 11 in the manner alleged by appellee, subject to its right of way, cannot be made to depend upon the allegations to which the other exceptions were sustained, viz. that some three years before the filing of appellee's petition appellant had constructed a private residence on the rear of said lot extending about two feet over appellee's pipe line, and shortly thereafter a large greenhouse in line with said residence over said pipe line, said greenhouse extending the same distance over said line, to the construction of which buildings appellee made no objection, etc., and that, by reason of the construction of said buildings without objection on the part of appellee, appellee is estopped to question the right of appellant to proceed with the construction of the build-

ing now sought to be enjoined; that appellant had no notice of the pipe line being on the place where it is located when he built said residence and greenhouse, and had no notice of its location when he began the construction of the building now sought to be enjoined; that there are now several buildings and gasoline filling stations over said pipe line in various places in the vicinity of appellant's premises; and that appellee has permitted expressly or impliedly such construction of buildings and filling stations, and has fully acquiesced therein, thereby giving consent to such structures over the right of way.

We have carefully considered appellee's bill and appellant's answer thereto, and find that every material allegation of the bill was specifically denied under oath. The temporary writ of injunction was granted on an ex parte hearing, and the sworn allegations of the motion to dissolve, being responsive to the bill, should have been taken as true. Lone Star Lodge No. 1935, Knights & Ladies of Honor, v. Cole, 62 Tex. Civ. App. 500, 131 S. W. 1180; Boykin v. Patterson (Tex. Civ. App.) 214 S. W. 611; Dawson v. Baldridge, 55 Tex. Civ. App. 124, 118 S. W. 593; Houston Elec. Co. v. City of Houston (Tex. Civ. App.) 212 S. W. 198; Harris v. Thomas (Tex. Civ. App.) 217 S. W. 1068. It therefore appearing that appellant having sworn away all of the equities alleged in appellee's petition for the relief sought, the trial court abused its discretion in entering the order appealed from, which abuse was augmented, by reason of the evidence introduced on the hearing of the motion to dissolve.

The following material facts were established by the evidence introduced upon the hearing of the motion to dissolve: On December 13, 1912, L. W. Bond and wife, then the owners in fee of 160 acres out of the Wesley Cockrell survey in Dallas county, Tex., conveyed to appellee, its successors and assigns, "the right of way to lay, maintain, and operate pipe lines over and through" said 160 acres of land. By the terms of said instrument, it was provided that appellee, its successors and assigns, should have and hold said right of way "so long as such line or lines shall be maintained, with ingress and egress to and from the same, for the purpose of constructing, inspecting, repairing and maintaining the same, and the removal of such at will in whole or in part." By the terms of said instrument, grantors reserved the right to fully use and enjoy said premises, except for the purposes for which the right of way over same was granted to appellee. The lot involved here is lot 11 of block 1, Bond's Annex to Arcadia Park, part of a division of said 160 acres of land made after the conveyance of said right of way over the 160-acre tract. Appellant is the successor in title of said Bond and wife to said lot 11. Appellant did not know of the location of appellee's pipe line on said lot at the time he began the erection of the building sought to be enjoined. After he learned of the location of the line on said lot, he directed the contractor for the construction of said building to make suitable provision for the protection of said line, so as not to interfere with appellee's suitable use of same. The framework of the building had been erected before appellant learned of the location of the pipe line on said lot, and said framework extends over the pipe line from two to three feet. It was shown that it was possible and feasible to protect said pipe line in the construction of said building so that the construction and maintenance thereof would not materially prevent said appellee's ingress and egress to and from said lot for the purpose of inspecting, repairing, and maintaining its pipe line and the removal of same at will in whole or in part.

In reference to the use that appellee is now making and has made of its right of way over the 160 acres of land, including said lot 11, E. F. Smith, appellee's superintendent, testified:

"The pipe line which traverses said lot 11 is an 8-inch line, the pressure carried upon it is 200 pounds per square inch; it varies from time to time from 150 to as high as 225. Its delivery capacity is 10,000,000 feet a day. It is used for delivery of gas to the Oak Cliff section of the city of Dallas."

With reference to the improvements made on said lot 11 since same was conveyed by Bond and wife, appellant testified:

"'I have buildings on that lot; one of those buildings is a residence and one is a greenhouse. The greenhouse is built up to the property line of the lot, in line with the residence. One of those buildings has been there about four years and one about two. I did not have anything to do with the building of the first building—the residence. I put the greenhouse on the lot. The greenhouse is 122x115 feet. The greenhouse is 2 feet over the gas line. The building which I am now attempting to build is just an extension of the present greenhouse. It is on the property line. It is to be used for an office."

[3] It is true that by the conveyance from Bond and wife appellee acquired the paramount right of use, which is in effect a dominant estate in said lot 11, to the extent of the right to use said lot for the purposes for which said conveyance by Bond and wife was made, viz. the right to lay, maintain, and operate pipe lines over and through same. All other right of use in said 160 acres of land was reserved to the grantors, and, as said land was conveyed by them in different tracts, such right of use passed to their vendees. Appellant being the successor in title of said Bond and wife to lot 11, he oc-

cupies the same position with reference to said lot 11 that they occupied before it was conveyed. Every right of use except that which was granted to appellee exists unimpaired in appellant, and, unless the use contemplated by appellant to make of said lot is unreasonable in that it would in effect destroy the appellee's easement, then certainly it does not lie with appellee to in effect confiscate all the property rights reserved to appellant by showing that such use would make more burdensome the right of use secured to it. The fact that the use which appellant intends to make of his lot would interfere with, or make more burdensome, appellee's use of its right of way, could not be permitted to defeat appellant's right of use as the owner of the fee in said lot; provided such use should not be destructive of, or so burdensome as to destroy, the paramount right of use vested in appellee under its grant of right of way. Appellant was strictly within the right of use that rested with him as owner in fee of said lot, as same was not unreasonable, viz. such as would materially obstruct or interfere with appellee's proper use of its right of way. In other words, the use appellant assumed to make of his ownership was not in violation of the dominant right of use vested in appellee, although in some respects, in order to enjoy such right, a greater burden might thereby be placed on appellee. This burden necessarily must have been within the contemplation of the parties when the right of use for every other purpose than that conveyed to appellee was reserved to appellant's remote vendor, Bond and wife. To sustain appellee's contention with reference to its right of use would be but to hold that no use of appellant's ownership could be made of the property involved except that which appellee would be willing to concede was not in conflict with, or an infringement upon, its right of use. In other words, any inconvenience to which appellant's use might subject appellee in its right of use would be sufficient to deny to appellant the right to profit by his ownership. It would be an unreasonable interpretation of the rights of the parties to hold that it was intended, in creating the dominant estate in said lot 11, that the right of use reserved to appellant's remote vendor would be destroyed because the exercise of such right would make more burdensome to appellee the exercise of its right of use, for such holding would in effect be a confiscation of the property rights of Bond and wife, or their successors in title, as the use of property is the real value thereof.

It is not that the threatened use of the premises by appellant would interfere with the right of use constituting the dominant estate, but would such interference be so unreasonable and far-reaching in its effect as to so obstruct the right of use created by such dominant estate that it would destroy

same, that should constitute the real ground upon which the relief sought by appellee should rest. We are of the opinion that the trial court erred in refusing to dissolve and in continuing in effect the temporary writ of injunction. It is therefore ordered that said judgment be, and the same is hereby reversed, and the motion to dissolve said temporary injunction be, and the same is hereby, sustained.

Reversed and rendered.

### On Motion for Rehearing.

[4] In concluding that the trial court erred in refusing to dissolve the temporary writ of injunction, we were actuated by what we understand to be the proper rule of law governing the respective rights of appellant as owner of the fee and appellee as owner of the easement, viz. the right to construct and maintain a pipe line for the purpose of conveying gas for distribution in the prosecution of its business as a vendor of gas. The right of property, it is true, is no more vested in the appellant as owner of the fee than the right of use for the purpose of enjoying the benefits that its easement secured to appellee. In this respect appellee owns the dominant estate. The plan of construction and character of material used by it in the original installation of its pipe line, as the only means by which appellee was to enjoy the property granted it, was not a part of the right of way granted. While appellant, as owner of the fee, could not use his right of property so as to in effect deprive appellee of the enjoyment of its right of way, on the other hand, appellee did not acquire the right to unnecessarily continue the use of the pipe line as originally installed, if such use would in effect destroy the right of the appellant to so use his proprietorship as the owner of the fee in the land as not to deny to appellee the enjoyment of its property right, provided such use would leave available to appellee other well-known plans and specifications for the reconstruction of its pipe line which would not impair its right of use and at the same time would enable appellant to enjoy his right of property; that is, such change in the pipe line as originally constructed by appellee could be made as to respect and protect the property rights alike of appellant and appellee. This we were justified in concluding could be accomplished from the testimony of the witnesses Smith and Herbst, which we accepted as being sufficient to show that it was not necessary, in order for appellee to enjoy its franchise or right of way, to use the means originally adopted by it in installing the pipe line now in use, but that there was available to appellee means of installing a gas pipe line that would secure to it the full enjoyment of its franchise, with as much safety for the protection of its property rights as the means

now used, and which would enable the appellant to enjoy the use of his property for the purposes for which he has occasion to use it under the developments due to commercial progress of the section of the country where appellant's land is located.

[5] However, in consideration of the fact that, to dissolve the injunction, would give the appellant an opportunity to destroy the subject-matter of the litigation by constructing the improvements sought to be prohibited from being erected, and, further, on account of the public interest necessarily involved in the proper maintenance of appellee's facilities for receiving and distributing gas to the public, and as of necessity the rights of the parties that should be safeguarded by appropriate judgment in reference thereto upon a full hearing, we have determined that we erred in holding that the trial judge abused his discretion in refusing to dissolve the temporary writ of injunction.

Therefore, in order to preserve the status of the parties in reference thereto, appellee's motion for rehearing is granted, and the judgment of this court, reversing the judgment of the court below, is set aside, and the judgment of the lower court in all things affirmed.